ADDRESSOGRAPH–MULTIGRAPH COR-
PORATION v. AMERICAN EXPAN-
SION BOLT & MFG. CO.
No. 7637.

Circuit Court of Appeals, Seventh Circuit.
Nov. 25, 1941.

Rehearing Denied Jan. 14, 1942.

Samuel W. Banning and Ephraim Banning, both of Chicago, Ill., for appellant.

Philip M. Aitken, of Lincoln, Neb., and John Rex Allen, of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an interlocutory injunction decree, entered February 7, 1941, in conformity with the prayer of a complaint charging unfair competition.

The complaint, filed February 21, 1934, charged as its major premise that the defendant had misappropriated a business system originated, built up and maintained by the plaintiff. This system, so it was alleged, was a new and novel idea in the commercial field, namely, the addressing and writing of various data on many business forms in a mechanical manner rather than manually as had been the practice theretofore. Plaintiff's system included the medium by which the idea of mechanical addressing could be successfully marketed. Mechanical addressing requires the manufacture and sale of blank plates, upon which the information desired to be printed on the various business forms is embossed, the manufacture and sale of machines for embossing the information on the blank plates (such machines were designated by plaintiff as "Graphotypes"), the manufacture and sale of machines through which the embossed plate would pass so that the information on the embossed plates would be transferred to a business form or letter (such machines were known as "Addressing Machines").

It was also alleged that in building up this system, plaintiff had expended great effort and large sums of money in advertising, developing and maintaining extensive sales and service organizations, that the machines used in the system were sold at a low margin of profit and that plaintiff's profits were derived largely from its system rather than the sale of machines. It was further alleged that among the supplies or parts necessary to the operation of the addressing machines were address plates; that plaintiff's chief source of profit resulted from the sale of such plates which were required by its customers in great volume as its system developed, and that without the profits derived therefrom it could not afford the expense of maintenance and expansion of its business system.

The patents covering plaintiff's mechanical equipment, including the address plates, expired about a year previous to the time when defendant commenced the manufacture and sale of the address plates, admittedly sold to the owners and users of machines purchased from the plaintiff. Defendant also admittedly has not attempted to compete with plaintiff's business system through the development of such a system of its own, but has limited its competition with plaintiff to the sale of the address plates which are intended only for use in connection with plaintiff's machines. Also admittedly, the defendant has incurred none of the expense in the manufacture and sale of plaintiff's machines, nor in the establishment and maintenance of its so-called system. Thus, so it alleged, defendant is enabled to sell its plates at a substantially lower price than plaintiff without contributing to the development or maintenance of plaintiff's system. Upon this premise it is contended that defendant has misappropriated plaintiff's business system and is therefore liable for unfair competition.

Other charges were made against the defendant which we think may properly be termed ancillary or perhaps incidental to the main charge, as follows: (a) Distribution of inferior products to the injury of plaintiff's good will, (b) substitution of plaintiff's plates on orders for defendant's plates in certain instances without notice to

customers,[1] (c) misrepresentation as to the character and quality of defendant's plates, (d) improper acquisition of information concerning plaintiff's customers and business, and (e) libel (1) assertions by the defendant that plaintiff was charging monopolistic prices, and (2) charges by the defendant that plaintiff's service men were guilty of sabotage in an effort to discredit the defendant.

A hearing was had before the Master who, in his final report, found all issues in favor of the defendant, except (1) that the defendant on several occasions sold plaintiff's plates without sufficiently advising customers as to the origin thereof, and (2) defendant represented to customers that service men employed by plaintiff would misadjust the machines when they found defendant's plates in use thereon, and also represented to customers that plaintiff was a monopolistic company and charged monopolistic prices. It was recommended that an injunction issue requiring the defendant, when supplying plaintiff's plate, to give adequate notice to the customer that it was of plaintiff's manufacture and that defendant be restrained from making the so-called libelous statements. Objections were filed to the Master's report by both parties. Plaintiff's objections were sustained and those of the defendant overruled. Thus, the court found all issues in favor of the plaintiff and entered its findings of fact, conclusions of law and the decree from which this appeal was taken. The court also ordered an accounting of profits and damages.

■ It appears that the lower court decided the case upon general Federal law. At any rate, it is certain that the law of unfair competition, as announced by the courts of Illinois, was not applied. We are therefore at the threshold of our consideration met with defendant's contention that under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the law of the state, as announced by its courts, must be given effect, and that by such law, no cause of action was stated or proved. Plaintiff feebly responds to this argument by calling attention to the fact that neither of the parties relied upon the Erie case in their briefs filed with the Master, and for this reason it should not be considered here. It further argues that the case, by its very nature, is and should be an exception to the rule therein announced. Neither contention is plausible. A study of the Erie case is convincing that it is of general application with the exception stated on page 78 of 304 U.S., on page 822 of 58 S.Ct., 82 L.Ed. 1188, 114 A.L.R. 1487: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. * * *"

Any doubt in this respect was removed in Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 205, 58 S.Ct. 860, 861, 82 L.Ed. 1290, where the court said: "* * * The doctrine applies, though the question of construction arises not in an action at law, but in a suit in equity. * * *"

There is little room for argument but that the District Court, as well as this court, must give application to the Illinois law of unfair competition. This court would be obliged to apply the State law announced subsequent to a decision of the lower court. Vandenbark v. Owens-Illinois Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327.

■ Confronted with this situation, no good purpose could be served in analyzing the many Federal cases relied upon by plaintiff in support of the decree. This is so for the reason that the law of unfair competition, as announced in Illinois, must be applied. In Stevens-Davis Co. v. Mather & Co., 230 Ill.App. 45, in an exhaustive opinion where the issues were quite similar to those of the instant case, that court, after an extensive review of authorities, 230 Ill.App. on page 65, said: "The courts in this State do not treat the 'palming off' doctrine as merely the designation of a typical class of cases of unfair competition, but they announce it as the rule of law itself—the test by which it is determined, whether a given state of facts constitutes unfair competition as a matter of law. * * * The 'palming off' rule is expressed in a positive, concrete form which will not admit of 'broadening' or 'widening' by any proper judicial process. It is rigid and inelastic. * * *"

In the instant suit, plaintiff relies heavily upon International News Service v. As-

---

[1] We do not understand there is any contention that the proof discloses a conventional charge of "palming off." The proof relative thereto and any contention arising therefrom must be viewed in the light that it was incidental to the main charge of unfair competition with plaintiff's business system.

sociated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293, in support of its theory, adopted by the lower court, that defendant was guilty of unfair competition by a misappropriation of plaintiff's business system. That identical theory was presented and rejected in the Stevens-Davis case and the International News Service case was referred to on page 66 of 230 Ill.App., as follows: " * * * The decision of the Supreme Court of the United States, although entitled to the deference which is due to so distinguished a tribunal, is not a rule of decision that must be followed by a State court in the class of cases in question. In cases not involving the construction of the constitution or laws of the Union, the decisions of the Supreme Court of the United States are not binding as authority on the State courts. * * * "

In other words, the Stevens-Davis case repudiates the precise theory on which plaintiff attempts to sustain the decree in the instant case. The doctrine of unfair competition, as announced in the Stevens-Davis case, was expressly approved by the same court in Soft Lite Lens Co., Inc., v. Ritholz, June, 1939, 301 Ill.App. 100, 21 N. E.2d 835. Nor can the Illinois rule be questioned because it has been announced by an intermediate state court. In the recent case of Fidelity Union Trust Co. v. Field, 311 U.S. 169, 177, 61 S.Ct. 176, 178, 85 L.Ed. 109, the court said: " * * * An intermediate state court in declaring and applying the state law is acting as an organ of the State, and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. We have declared that principle in West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 [132 A.L.R. 956]. * * * "

The law of Illinois having been clearly announced, it follows, so we think, that not only was the decree appealed from erroneously entered, but that plaintiff's bill of complaint failed to state a cause of action. We are presented with the further contention on the part of the plaintiff, however, that if the doctrine of the Erie case is to be given application, it must also be applied to the field of conflict of laws. That the doctrine embraces such field has recently been held in Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, wherein the court said: "We are of opinion that

the prohibition declared in Erie Railroad [Co.] v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, against such independent determinations by the federal courts extends to the field of conflict of laws. The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. * * * "

We understand in Illinois the conflict of laws rule requires the application of the law of the State where the wrong is consummated. There may be some exceptions or limitations upon this rule, but if so, they are not here material. Defendant concedes that there is such a rule, but denies its relevancy in the instant situation.

On the other hand, plaintiff invokes the rule on the theory that the unfair competitive acts occurred in states other than Illinois. In its own language, its contention is thus stated: " * * * The misappropriation of the plaintiff's system was accomplished through the introduction into that system of the defendant's plates at the customers' place of business, which was outside the state of Illinois. The wrongs to plaintiff by reason of defendant's false advertising and libelous statements were accomplished at the point that these charges were in legal contemplation published, that is, where the plaintiff's customers and the public read such charges, which was outside the state of Illinois."

We do not agree with this contention. As pointed out heretofore, the main charge of unfair competition was a misappropriation by the defendant of plaintiff's business system. The essential element of this alleged wrong was the manufacture and sale by the defendant of plates for the purpose of use in certain machines manufactured and sold by the plaintiff. Defendant's place of business was in Illinois where it received and filled orders for such plates. The wrong, if such it be, was the sale in Illinois for the use indicated. In our judgment, there is no merit in plaintiff's argument that no wrong was committed until the plates were actually used in a foreign state. We have also pointed out heretofore that the other alleged offenses, such as libel and misrepresentation, were merely incidental to the main charge. Certainly, standing alone, they do not constitute unfair competition under the Illinois rule. We think we might add that they, standing alone, do not constitute unfair competition under the Federal rule. At most, they

were acts of aggravation to the main charge. When the main charge fails, those incidental thereto must also fail. We therefore conclude there is no occasion to apply the Illinois conflict of laws doctrine.

The decree is reversed and the cause remanded with directions to vacate the judgment and dismiss the complaint.