## RYTEX CO. v. RYAN et al.
### No. 7807.

Circuit Court of Appeals, Seventh Circuit.
Feb. 18, 1942.

Rehearing Denied April 27, 1942.

Verne A. Trask and Thos. P. Jenkins, both of Indianapolis, Ind., Milton T. Miller, of Chicago, Ill., and Schley & Trask, of Indianapolis, ·Ind. (Wilkinson, Huxley, Byron & Knight, of Chicago, Ill., of counsel), for plaintiff-appellant.

Carl S. Lloyd and Kirkland, Fleming, Green, Martin & Ellis, all of Chicago, Ill., for defendants-appellees.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decree, entered June 26, 1941, allowing defendants' motion to dismiss plaintiff's complaint which alleged trademark infringement and unfair competition. Defendants, by answer, denied the charges and a hearing was had to the court on oral and deposition testimony. No evidence was offered on behalf of the defendants as the motion to dismiss was allowed at the conclusion of the plaintiff's evidence.

Plaintiff, the Rytex Company, is an Indiana corporation located at Indianapolis which, in 1929, succeeded a partnership by

the same name. The latter commenced business in 1922. The defendants, Frank J. Ryan and Betty Ryan, husband and wife, are doing business in Chicago, Illinois, under the name of "The Ryan Art Company." Both plaintiff and the defendants are engaged in the business of manufacturing and selling personal stationery, consisting of writing paper and envelopes printed with the name, address, or monogram of the purchaser, intended for individual personal use, together with certain allied products, including Christmas cards, calling cards and wedding stationery.

Both parties employ the same general method in the sale of their products. Neither sells direct to the purchasing public, but through retail outlets such as department stores, stationery shops, gift shops, etc. Such products are sold from samples contained in sample books or, in some instances, from samples displayed in counter folders or on cards adapted to be displayed on the stationery counters of the retail outlets. The customer selects from such samples the style of stationery desired, including the kind, size and color, as well as the type and color of ink to be used in imprinting the stationery, and places an order therefor with such retailer. The order is forwarded to the manufacturer, printed by it, shipped back to the retailer who took the order, and by him delivered to the customer. Neither party does any direct advertising, but they both supply for the use of retailers, advertising matter such as display posters, counter cards, sample books, etc., as well as copy for newspaper advertising. The expense of utilizing the advertising matter furnished by the manufacturer is borne by the retailer. This method of doing business has been followed by the plaintiff since 1931, and has developed until it now has between 3000 and 4000 retail outlets located in every large city in the United States. The defendant partnership was formed in 1935, and commenced business shortly thereafter.

Plaintiff relies upon two registered trademarks—"Rytex," which has been used by plaintiff and its predecessor since 1922, and "Rytex Deckle Edge Vellum" registered and used since 1932. Defendants advertise their product under the trademarks "Rynart" and "Rynart Deckle Edge Vellum," and it is claimed by plaintiff that such trademarks infringe the marks employed by plaintiff. It is conceded that the words "Deckle Edge Vellum" are descriptive. On the question of infringement therefor, the controversy is concerned largely with the marks "Rytex" and "Rynart." It is claimed that the latter is confusingly similar to the former. It is further contended that defendants' sample books, advertising makeup and general method of doing business are also intended to, and do, deceive the public and are, therefore, an unfair method of competition.

The court found there was no substantial evidence of confusion, of trademark infringement, or of unfair trade, and no evidence of any intent or attempt to palm off defendants' product for that of the plaintiff. The court also found that parties other than those here involved used the same sales methods, and that there was no evidence of any unfair copying or use by the defendants of plaintiff's sales methods.

■ That this court is bound by the findings of the court below if substantially supported is a rule so well established as to require no citation of authority. In the beginning, we observe there is no claim that plaintiff's product has acquired a secondary meaning—in fact, it is stated by the plaintiff it does not desire the public to know its identity or location, and that it purposely conducts its business so that all its products will be sold through retail outlets. Notwithstanding this situation, plaintiff contends that confusion as to origin is controlling. Plaintiff does not dispute defendants' right to engage in the personal stationery business, and to display their products in sample books. As stated in their brief, they do contend: " * * * What plaintiff does complain of is that defendants have exercised those rights in a particular manner, and with the aid of particular sales and display material, which was intended to and did confuse and mislead the public into buying defendants' goods as and for the goods of plaintiff."

It is argued that the mark "Rynart" in itself is so confusingly similar to the mark "Rytex" as to amount to infringement. Northam Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, a decision of this court, is relied upon by plaintiff. In that case, the mark "Cuticlean" was held to be an infringement of the mark "Cutex." Another decision to the same effect is Gehl v. Hebe Co., 7 Cir., 276 F. 271, where it was held that the mark "Meje" infringes "Hebe" and that evidence of actual confusion was not necessary. In Nu-Enamel Corp. v. Armstrong Paint & V. Works, 7

Cir., 95 F.2d 448, it was held that the mark "Nu Beauty Enamel" was an infringement of "Nu-Enamel." This holding was sustained by the Supreme Court, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195.

On the other hand we have held that the mark "Sal-Vet" was not infringed by the mark "SalTone." Feil Co. v. John E. Robbins Co., 7 Cir., 220 F. 650. That "Red Heart" did not infringe "Strongheart" was held in John Morrell Co. v. Doyle, 7 Cir., 97 F.2d 232, 233, and that the mark "Steam-O-Matic" did not infringe the mark "Steem-Electric" was held in Steem-Electric Corp. v. Herzfeld-Phillipson Co., 7 Cir., 118 F. 2d 122. It has also been held that the mark "Vapure" is not an infringement of "Vapex." Thomas Kerfoot and Co. v. Louis K. Liggett Co., 1 Cir., 67 F.2d 214.

■■ From these and other authorities which could be cited, it appears that generally a trade name is found to infringe only when there is proof of actual confusion occasioned by the manner of its use. It appears that the cases where infringement has been adjudged without proof of actual confusion are exceptions to the general rule. In our opinion, such adjudication should be made only where the mark charged to infringe is so strikingly similar that, on its face, it is calculated to result in confusion. We are of the view that such a conclusion can not be reached by a comparison of defendants' mark with that of plaintiff. In other words, there is sufficient dissimilarity between "Rynart" and "Rytex" that the former is not per se an infringement of the latter. This appears to have been conceded by plaintiff's counsel in the lower court, wherein it was stated: "I am not contending that there is any confusion between the names Rynart and Rytex as names."

■■ As to whether defendants' mark, as used, constitutes infringement, is dependent upon substantially the same proof as is required to support the charge of unfair competition. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195. In establishing such charge of unfair competition, we are of the view that plaintiff must show more than slight confusion—it must be proved that the defendants palmed off their goods for that of the plaintiff, and such proof must be by clear preponderance of the evidence. Soft-Lite Lens Co., Inc., v. Ritholz, 301 Ill.App. 100, 105, 21 N.E. 2d 835. Undoubtedly, this is the rule in Illinois, and perhaps in the Federal Courts. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U.S. 537, 549, 11 S.Ct. 396, 34 L.Ed. 997. Whatever may be the rule in the Federal Court, however, we think the state court rule must be applied. Addressograph-Multigraph Corp. v. American Expansion Bolt & Mfg. Co., 7 Cir., 124 F.2d 706, decided by this court November 25, 1941.

From a study of the record, we think the court below was justified in finding no substantial evidence of confusion, but even if some confusion was shown, it was not sufficient to substantiate the charge. There is not a scintilla of evidence that defendants' products were actually palmed off to any customer as those of the plaintiff. There is no evidence that any customer called for plaintiff's and was furnished defendants' product. It is contended by plaintiff, however, that defendants' method of selling was an attempt to palm off their stationery as that of the plaintiff.

The court heard the oral testimony of three witnesses and two others by depositions. The testimony regarded by the lower court as most favorable to plaintiff was given by the witness Washburn, plaintiff's office manager, and we shall refer to it only. He related an incident wherein he had a telephone conversation with a Mr. Romer who informed him that he was out of Rytex Christmas cards. Washburn was unable to recognize the description of the cards which Romer desired, and suggested that a sample be brought to the Rytex office, which was done. When Washburn advised him it was not a Rytex card, Romer turned it over and found on the back a "Rynart" mark. He then stated: "This is stamped Rynart. Isn't that Rytex"? Romer did not testify, and we are unable to discern how, or in what manner, he had been deceived. Certainly it was not because of the trademark. In fact, he did not know of the mark until it was called to his attention. There may be a speculative inference that he purchased some Rynart cards with the thought that they were Rytex. If such be the case, there is no evidence as to what was responsible for the thought. In this instance, as in others relied upon by the plaintiff, the confusion, if such it be, resulted, so we think, not because of the similarity of trade names, or the similarity in the methods of advertising, but in the natural and inevitable similarity of the competing products. As stated in plaintiff's brief: "There are many

other manufacturers in this type of business, who sell the same type of goods, in the same general way. * * *"

██ To a large extent stationery is standardized as to size, quality and color. We have no doubt but that it would be difficult for a customer to distinguish between defendants' stationery and that of the plaintiff, as well as that manufactured by other concerns. Defendants, however, had as much right to manufacture and sell their stationery as did plaintiff. They had a right to sell at the same price or a different price, as they saw fit. As was said in Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 120, 59 S.Ct. 109, 114, 83 L.Ed. 73: "Where an article may be manufactured by all, a particular manufacturer can no more assert exclusive rights in a form in which the public has become accustomed to see the article and which, in the minds of the public, is primarily associated with the article rather than a particular producer, than it can in the case of a name with similar connections in the public mind. * * *"

We think it is also of some significance that considering the magnitude of plaintiff's business, with its 3000 to 4000 retail outlets, it is compelled in this case to depend upon four or five widely isolated incidents of doubtful support. Washburn, plaintiff's office manager, was able to relate only the Romer incident, to which we have already referred. Another witness, Dettra, employed by plaintiff to travel about the country for the purpose of rendering assistance to retail dealers in handling plaintiff's product, was able to relate two incidents only of alleged confusion. It would seem if confusion was as rampant as plaintiff contends, that proof in support thereof would not have been difficult of ascertainment from at least some of the retail dealers who exclusively handled the product and who were in direct contact with the purchasing public.

We do not think the method employed by defendants was such as to indicate they were attempting to sell their product as that of the plaintiff. In fact, the sample books from which the customers made their selections are distinctively different in color, design and in the words which appear thereon. Also, the boxes in which the stationery is packed are equally dissimilar. Plaintiff contends that this is immaterial because the purchasers do not see the boxes until the product is delivered. The cir-

cumstance indicates, however, that defendants were endeavoring to distinguish their product rather than simulate that of the plaintiff.

It is our conclusion that the evidence failed to support either the charge of trademark infringement or unfair competition, and that the court properly dismissed the complaint. Its decree is accordingly affirmed.